Chief Justice Robishtson
delivered the opinion of the court.
Tins is an action of assumpsit, biought by the administrators of Hugh Manners, against the executor and executrix of Richard Head.
The declaration contains several counts; some of them charging an assumpsit by the testator, and another a promise by his personal representatives to the administrate'.s, in consideration of carpenter’s work done by the intestate for the testator, and on his house, in his life time, at his request.
Issues were taken on non assumpsit, and on non assumpsit within five years.
The statute of a'beneficial18 act, dictated by sound policy and designed for peace and justice.
It appeared from the proof, that the assumpsit of the testator had been barred by lapse of time. But one witness swore that after the death of the testator, he (the witness) measured and valued the work, and the executrix at that time, ^stated that the work had been done, and ought or should be paid for] but whether it was the word ought or should be, he could not say; that this conversation took place in the presence of one of the plaintiffs.”
The administrators having obtained a judgment, this court reversed it, because there was no proof as to the time when the executrix made the statement which has been quoted.
On the second trial after the return of the cause to the circuit court, it was admitted, that the alleged ao knowledgement or promise by the executrix, was made within five years prior to the institution of this suit. Upon this state of the case, without other proof, except as to the execution and the value of the work, the administrators obtained a judgment for §566 28 cents.
The only question now presented for consideration, is, whether thei e was any evidence of such a promise or acknowledgment by the plaintiffs in error, as will sustain the verdict against them? This question is left open by the former decision; see the case in VI Monroe, 185.
The statute of limitations is a beneficial act, dicta-^7 soun<^ policy, and designed for peace and justice.
It was recommended by two general considerations;
. ,, 1st. The presumption, that alter so long a lapse ot time, the cause of action had been discharged,
. 2d. The antipathy of the law to vexatious litigation upon stale claims, and the obvious necessity for repose and security, at some time. The last has been considered the principal motive for the enactment of statutes of limitation. It has been deemed better that, in rare cases, an indulgent or negligent creditor should b^subjected to the hazard of loosing a just demand as the penalty of his delay, than that the crafty and dishonest should be encouraged to sue for claims that had been satisfied, but the extinguishment of which, could not be expected to be proved satisfactorily, after the lapse of several years. Jt is as probable, that a defen *257 dant will not plead the limitation unjustly, as that the plaintiff will not attempt to coerce a demand which had been paid. And it is essential to the just and wholesome administration of law in its remedial action on private rights, that some period shall be fixed, beyond whidh the citizen may not be harrassed, but may feel secure and enjoy repose.
Statutes of sSÍTofbeiug -¿ontemned, should beta* Tore<3'
a b^the statute Df limitation, there'is a The moral1 ’ obligation to been-barred by the statute oflimitation, 'oons¡(]e,.ati0n to render a by the debtor, to pay it, ob-
Hence, in all well regulated communities, some limitation has been prescribed to litigation.
And hence, too, it results, that statutes'-of limitation, emphatically denominated “statutes of peace” instead of being contemned, should be favored. They may sometimes be perverted, dishonorably, to unjust ends, But, as general rules, they are salutary, and eminently conducive to justice.
A light of entry upon land may be tolled by twenty years adverse possession, not so much because a conveyance or release of the title to the occupant will be presumed, as because justice and policy require that such a .possession should assure peace, and security ¡from intrusion.
So a -parol assumpsit may be barred by time,'not so much because the demand will be .presumed to have been satisfied, as because.it is expedient that it should not be the subject of litigation, when proof«which was once obtainable, may have become inaccessable or ineffectual.
In ’this -case, 'the original cause of action for work was barred by time. Therefore, the plaintiffs in' error having pleaded the limitation, the original cause of action could not be enforced. But-if the worbhad never been paid for, the plaintiffs were-'under a moral obligation to pay for it, although the legal- obligation had been extinguished by time. This-moral -obligation was a sufficient consideration for-an obligatory promise by the plaintiffs to pay for the work. And, therefore, -if they made any such promise, within five years before the impetration of the writ, that undertaking may be enforced, unless .there has been 'a failure of assets.
A promise by the executrix would be binding equally on the executor.
W here there are tivo exec utors, apromi-. oy o».e of them to pay a debt which is barred by the statute of limitag.. binds the other. ituteof the
To revive a debt which is barred by the statute of limitation, there must be a new promise, express or suck imply finid founded upon the original tion.laeia"
A promise to pay a debt red* by^he'1" statute ofiimitation, if untheor? Mai considera"tion, is nudumpadum.
If there can be any recovery at all, it must be on new promise, and therefore, to be obligatory, it must have been express, or such as the taw will imply, and founded on the original consideration; because,
1st. The law will not imply a promise in consideration of a moral obligation, and especially when, by lapse of time, the plaintiff is precluded from showing even such a consideration.
2d. A promise “uncoupled” with the original consideration would be “nudum pactum”
In this ca: e, if there was any promise by the executrix, it was connected with, and founded on, the original consideration. She admitted the execution of the work; and if she made any promise to pay for it, she made it in consequence of the execution of the work, which was a sufficient consideration.
We are of opinion, that the proof was not such as (G -justify the inference that there was an express promise. If the proof had been simply, that the executrix acknowledged the execution of the work, and thereupon, said “if shall be paid for” or if there had even been a preponderance of proof to this effect the jury might have been authorized to find that there was an express promise. For such a declaration would amount to*au express assumpsit. But this was very far from being the proof. The witness did not know whether the executrix “stated that the work, ought (to l?36) or ^501^be paid for.” And not only was he not more inclined to the opinion that she used “should” instead of “ought,” but he did not state a fact or circumstance from which the jury had any right to infer that she used the one wo/d rather than the other: If an obligation to pay, would not result from the expression, “ought to be paid for,” then the jury had no right to find any verdict against the plaintiffs in error. For if an obligation to pay, would result only from the expression “shall be paid for,” and no legal liability would follow the expression “ought lo be paid for,” then, as the witness did not know which expression she used, and there is no circumstance, tending to prove the one, more than the other, the evidence is entitled to no more effect than it would have been, if the witness had said that he did not recollect whether she promised to pay *259 the debt, or whether she acknowledged it to be due or not.
English deciw Matute ofHmNation of James, do not ^^t°ur coul
To.take a case out of an eTpress ao_’ knowledgthe debt as a debt due at that Iectwidi the" original consideration,) promiseto6™ pay it, must be proved to made^vithm the time-prescribed by the statute..
*259 If the latter had been, in form, as it is in substance and effect) the testimony, it would not be doubted, that the verdict should not be sustained, for then there would be a plain destitution of any proof of an undertaking to pay for the work.
But it may be supposed, that the admission that the work had been done, and the consequent declaration that it ought to be paid for, amount to an express acknowledgment of the debt, as a debt then due, and that such an acknowledgment is sufficient to maintain the action. We admit, that, if this would be evidence of a positive acknowledgment of a subsisting debt, and if the administratrix is bound by such an acknowledgment, the verdict should be sustained, because it is clear from the proof, that if there was no express promise to pay, there was a declaration that the work “ought to be paid for.”
In England, the courts had, by a species of judicial legislation, almost repealed the statute of limitation of James. They had frequently decided, that almost any proof tending to show that the defendant did not positively deny the debt, or insist that it had been paid, would take the case out of the statute of limitations. But feeling the inconvenience and unreasonableness of such a relaxation of the statute, the same tribunals have, for many years, been receding from their more ancient and latitudinary doctrines, and approximating a more rational and effectual application of the statute.
But we do not feel bound by British decisions on the statute of James. The decisions of our own court upon our own statute, are not only more authoritative, but are, in our opinion, more accordant with the end and policy of the statute; Bell vs. Rowland’s administrator, (Hard. 301,) has established and clearly defined the principles which have ever since been recognisedin this state, and by which this court must be governed.
The rule laid down in that case is, “that in order to take a case out of the statute of limitations an express acknowledgment of the debt, as a debt due at that time (coupled with the original consideration,) or an express promise to pay it, must be proved to have been *260 made within the time prescribed by the statute.” This Jlas ever since been received as the true doctrine; see Harrison vs. Handley, I Bibb, 443; and Gray vs. Lawridge, II Ibid, 285.
Rule, that a bare acknoiucíebToTíí °ubsisting detakethe'caseout of the statute of limitation, beextended beyond its letackapwledgof a sisting de-SUb" maud, will not take the theestatutef unless it is ’ reasonably infirable from tneacknowlodgment, ty'makmg'it intended to xf^en an acknowledge ment of the of made, even an intimation is-the^tatuteo? limitation will bo pleaded,thelaw will not imply a promise to
*260 U there Can be any objection to the rule thus prescribed, it should be, that the rule is too comprehensive, It might be seriously doubted, if the question depend-e(l now on principle, and was not concluded by authority, whether a bare acknowledgment of the debt as a subsisting demand should be sufficient to prevent the effectual operation of the statute. After the debt has been barred by timé, the debtor, by pleading the statute, can prevent a judgment against him on the original contract. The contract is then dead. It can never be revived.. The debt, so far as it was merely legal, is extinguished. But as there maybe tumoral obligation †0 pay; tiw debt) not the original contract, may be revived by a new contract based on this moral consideration. If there can be any recovery therefore, it must (when the statute is pleaded) be on a new contract exclusively. Now should the law imply such novation from a bare admission that the debt had never been paid, and still remained due? Might not the debtor make such an acknowledgment when he never intended to pay the debt, but to shield himself behind the statute of limitations? It might be questionable, w^le^ler such an acknowledgment should take the case out statute, unless the sole motive for enacting it has been a legal presumption of payment. But this was not even the chief motive for its enactment; see Bell vs. Morrison, lately decided by the supreme court of the United States.
_ But the rule in Hardin is too firmly fixed to be now disturbed, and therefore it is recognized in the case of Bell vs. Morrison. This rule has, however, been strictly applied. It has never been extended, and never should be extended beyond its letter. This aPPear not only from the reason of the case, but from all the authorities which have been cited, and others which might b.e added, if necessary.
- Ineretore, none but an express acknowledgment, from which it may be reasonably inferred, that the party making il intends to pay the debt, will be sufficient. If, when the acknowledgment of the subsistence of the *261 debt is made, even an intimation is given that the statute of limitations will be pleaded, the law will not imply a promise to pay. So, for the like reason, if it even appear doubtful, from the manner of making the acknowledgment, or from any circumstance ing it, whether the party intends to pay it, a promise to pay it will not be implied. Any other doctrine than this would be legislation, and would not only change the statute, but virtually nullify it; Bango vs. Hall, II Picker. Rep. 361; Sands vs. Gelsen, XV Johnson, 511; Clemenson vs. Williams, VIII Cranch, 72; Metzal vs. Bussard, XI Wheaton, 309. These principles when applied to the proof in this case, will not sustain the judgment of the circuit court.
even appear cloubtful, from the °£e aoknowlodgment or from tending^t, whether the Party intends promise toa it will not be
A promise to pay a debt ™kich statute of limitation, can-1¿rlP^eti acknowlodgement that a debt is due.
If, when an accountis pre--sented, the debtor says “it is all right,” that is not an express acknowledgment of tjio dw at that °° time.
*261 t 1st. 1 he acknowledgment must be express. No implication will be sufficient; a promise to pay cannot be implied, from an implied acknowledgment that a debt is due. There was no express acknowledgment in this case. It might be inferred, that the executrix supposed that the intestate had not paid for the work, when she said “it ought to be paid for.” But she surely did not say that the debt was due, and had never been paid. As executrix, she could not be presumed fo know whether her intestate had paid for the work or not. She knew that she had not paid' for it. She knew that it had been done at her husband’s request, and therefore, ought to be paid for, if it never had been paid for. And this is the utmost that her knowledgment imports.
If she had acknowledged expressly that the debt remained due, unless the executor had paid it, this would not, according to the case in Hardin, have been construed into an express acknowledgment that the debt had never been paid; and therefore, there could he no recovery against her on such an admission.
If she had said, when the account was presented to her, “¿V is all rightthis would not have been an express acknowledgment of the debt as one due at that time; see Harrison vs. Handley, supra.
As the cause of action had been barred, the representatives of Head were not bound to prove, that he had not paid for the work. Nor would it have availed the representatives of Manners to have proved that Head never had paid a cent for it. The statute was *262 conclusive. And of course, when the suit is brought on a new promise by the representatives, the onus devolves on the plaintiff’ in the action. Proving a conditional acknowledgment, such as that proved in the Case *n ®-arc^'n5 be of no avail; nor will a consb’uctive acknowledgment be of any consequence. The defendants in action, being protected by the limitation, cannot be required to prove or to investigate any fact, behind the alleged new contract by them. Every fact of this kind is disposed of by the statute.
The distribu-,. tees may, by bili, compel plead the ° statute itation.
If the administratrix, after admitting the execution of the work, had said that she did not know that it had ever been paid for, she would not have rendered hex’self liable. Nor w uld she have been liable if bad said, that she did not believe that it had been paid for. Sue might, notwithstanding such a declara^tion, have intended to withhold payment, and entrench ’herself be'ind the statute of limitations. The dis-might, by bill have compelled her to plead the statute.
If an acknowledgment had been made hy Head himself, he would not have been hound unless it had been explicit and unequivocal, or such as to authorize the inference that he intended and did assume to pay for the work. Vague, equivocal, or indeterminate expressions, susceptible of different interpretations will not revive a debt which had been barred by time. If they would, the statute might he easily evaded, and perjury and injustice might be encouraged, instead of being, as it was the object of the statute that they should be, checked and frustrated.
2d. It may be seriously doubted whether a bare acknowledgment, by a personal representative, of the substance of a debt alleged to have been incurred by the testator or intestate would alone be sufficient to revive the debt, if it had been barred hy time. An executor or administrator cannot be presumed to know whether the demand was ever just; nor whether, if it ever was, it had not been satisfied; and therefore, it would be difficult, if not unreasonable to infer, from her acknowledgment, a promise to pay; and we are inclined to the opinion that, in such a case, the law would not imply a promise. Such seems to have been the opinion of the supreme court of the United States; *263 see XII Wheaton, 565. An acknowledgment by an executor is sureiy nor entitled to as mucu effect as a similar admission by the testator, because there could not be the same deduction from it, that the person making it knew that the cla.m was just, and to satisfy it.
An acknowle(iSment by or administrator, that a intestate is °l just, will not, oiitself, be proof of Ms liability, to menUigainsf him for the a]“?unt oftllc aim'
it seems, a bare acknoiolodgment, by administrator, of the subsis¿gbtwMch was incurred by the testa°r alcuic be sufficient to revive ,the ,debt ,lf has been barretl bytlie itation.° 1IK"
Chapeze, for plaintiffs.
Indeed asimple acknowledgment by an executor without a direct promise to pay a debt barred by time, is to a practical mina, rather an intimation that he does not intend to pay, than a promise that he will, If such an acknowledgment would be obligatory, the condition of personal representatives is peculiarly perilous, unless they should, in all cases, obstinately deny the justice of all demands against them; and take care never to admit directly or indirectly, that they may he j ust.
An acknowledgment of a fact may be evidence against the party making it, if he had personal knowledge of it. But an acknowledgment by an executor or administrator, that the claim against his testator0 or intestate is just, should not, of itself, he sufficient proof of his liability,, to justify a judgment against him for the amount claimed, and thus admitted to be just. He might require other and more conclusive evidence.
His acknowledgment would not hind him, because he did not know when he made it, whether the claim was legally d :e or not./ It would seem therefore, to result, that such an acknowledgment ought not to be sufficient to revive a debt against the testator or intestate which bad been barred by the statute of limitations, and that from such an acknowledgment alone, the law should not imply a promise to pay such a claim. In such a case, there is a “¿ocus penitential,” and the personal representative should not he compelled to pay a demand barred by time, unless, for a legal consideration, he had expressly undertaken to pay it. 7 A J
It is, therefore, our opinion, that the verdict of the jury was contray to evidence and law.
Wherefore, the judgment is reversed, and the cause remanded for a new trial.